# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

LATANGA THORNTON and
SHERRIE THORNTON,
        Plaintiffs,

     v.                                   Case No. 06C0845

LYNDA LUND, DARRYL BUCHOLTZ,
KRISTEN SWANGSTU and JOHN ARREDONDO,
        Defendants.

## DECISION AND ORDER

Pro se plaintiffs, sisters Latanga and Sherrie Thornton, bring this § 1983 damages action against Lynda Lund, Darryl Bucholtz and Kristen Swangstu, employees of the Wisconsin Department of Corrections ("DOC"), and John Arredondo, a City of Milwaukee police officer, alleging that defendants unconstitutionally searched their home. Lund is the parole officer assigned to plaintiffs' brother, parolee William Thornton, and Bucholtz and Swangstu also have parole-related responsibilities. In February 2006, defendants executed a warrantless search of plaintiffs' Milwaukee duplex, seeking evidence of criminal activity on the part of William. Defendants now move for summary judgment.

## I. BACKGROUND

During the relevant period, plaintiffs lived in a two-flat home in Milwaukee, Wisconsin. Latanga lived in the lower flat and Sherrie in the upper, and the common areas of the home included a foyer, basement, backyard and garage. Each sister controlled a private storage room in the basement. Individuals could access the foyer through a front door or a side door, and separate, locking doors led from the foyer to each flat and to the

basement. In addition, separate, locking doors led from the main basement area to the private basement storage areas.

In 2004, with Lund's permission, William moved into plaintiffs' home. At some point, he began staying there only two or three nights a month, but apparently he did not tell Lund this. In the months leading up to the search that is the subject of this action, William met with Lund several times in Latanga's basement storage room, which she had converted into a bedroom for her nephew. William had a key to this room, and Lund believed it to be William's bedroom. As a parolee, William had previously signed a form stating that he would make himself "available for searches or tests ordered by your agent including but not limited to . . . search of residence or any property under your control." (Lund Aff. Ex. 1008.) Further, William knew that DOC rules permitted warrantless searches of parolees' residences on the basis of reasonable suspicion.

On February 8, 2006, Lund and other DOC employees decided to search William's living area. Lund, Swangstu, Bucholtz and others placed William in a state van and drove to plaintiffs' home, where they met Arredondo. After knocking on the door and ringing the bell without a response, Lund called Sherrie, who was in the house, and told her of their intention to search the basement bedroom. Sherrie responded that William did not live there and that they could not enter the home without a search warrant. Lund told Sherrie that they did not need a warrant because William was a parolee and that she had William's keys. Lund states that Sherrie then permitted them to enter, but Sherrie denies this. Before anyone actually entered the home, Latanga arrived and said that William did not live there and that defendants could not enter the home without a search warrant. Latanga blocked the door but Arredondo moved her, and defendants entered plaintiffs' home. Lund

2

and the other DOC officials searched the basement bedroom and William's two cars, which were in the garage and on the street, while Arredondo looked on and provided security. They found contraband in the basement bedroom and in a vehicle.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The mere existence of some factual dispute does not defeat a summary judgment motion; "the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." Id. A fact is material if it might affect the outcome of the suit under the applicable substantive law. Id.

## III.  DISCUSSION

Defendants argue primarily that they are entitled to qualified immunity. To withstand this argument, plaintiffs must establish that defendants violated constitutional standards and that when they did so, the standards were clearly established. Levenstein v. Salafsky, 164 F.3d 345, 351 (7th Cir. 1998); Erwin v. Daley, 92 F.3d 521, 525 (7th Cir. 1996). In assessing qualified immunity, the "better approach . . . is to determine first whether the plaintiff has established a deprivation of a constitutional right at all." County of Sacramento v. Lewis, 523 U.S. 833, 841 n.5 (1998); see also Lynn Adelman & Jon Deitrich, Saying What the Law is: How Certain Legal Doctrines Impede the Development of Constitutional

3

Law & What Courts Can do About It, 2 Fed. Courts L. Rev. 87, 94, 96 (2007). Thus, I will first address plaintiffs' Fourth Amendment claims and, if necessary, ask whether the standard in question was clearly established.

**A.	Fourth Amendment Claim**

"'[P]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.'" Payton v. New York, 445 U.S. 573, 585 (1980) (quoting United States v. United States Dist. Court, 407 U.S. 297, 313 (1972)). "It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." Id. at 586. State officials may cross the threshold of a home without a warrant only if exigent circumstances exist or a person with authority (or apparent authority) consents to their entry. Steagald v. United States, 451 U.S. 204, 211-12 (1981). Even if a person with authority consents, if another person with authority is present and objects to entry, the officials should resolve the dispute by seeking a search warrant. Georgia v. Randolph, 547 U.S. 103, 106 (2006). If officials commence a search over the objections of a co-tenant, the search is unreasonable as to the objecting party. Id.

The Fourth Amendment provides lesser protection to parolees and probationers; such individuals may not complain of a warrantless search of their residence. United States v. Knights, 534 U.S. 112, 121 (2001); Griffin v. Wisconsin, 483 U.S. 868, 875-76 (1987). In Griffin, the Court justified the diminished protection on the ground that a search of a parolee or probationer is administrative in nature. Id. Subsequently, the Court upheld such searches on a different ground – that parolees and probationers have a lower expectation of privacy. Samson v. California, 126 S. Ct. 2193, 2198-99 (2006); Knights,

4

534 U.S. at 119-20; see also United States v. Hagenow, 423 F.3d 638, 643 (7th Cir. 2005) (discussing Samson and Knights). In Knights and Samson, the Court held that probationers and parolees had "significantly diminished" expectations of privacy because the state had notified them that they were subject to warrantless searches at any time and they had signed forms stating that they were aware of the condition.[1] Samson, 126 S. Ct. at 2199; Knights, 534 U.S. at 119-20. The Court weighed the minimal privacy interests against the government's heightened interest in protecting the public from probationers and parolees based on the concern that they are more likely to engage in criminal conduct than the general public.[2] Samson, 126 S. Ct. at 2200; Knights, 534 U.S. at 120-21. Further, although the Supreme Court has not decided whether a parolee's blanket consent to warrantless searches acts as a waiver of Fourth Amendment rights, the Seventh Circuit has found that it does. United States v. Barnett, 415 F.3d 690, 391-92 (2005).

Of course, officials may not search a home without a warrant based on the parolee/probationer exception if the home is not the residence of the parolee or probationer. See, e.g., Motley v. Parks, 432 F.3d 1072, 1078 (9th Cir. 2005) (en banc); Moore v. Vega, 371 F.3d 110, 116 (2d Cir. 2004); see also Steagald, 451 U.S. at 220

---

[1]Commentators have questioned this reasoning, asking whether "the government would be free to subject the rest of us to comprehensive surveillance 'merely by announcing half-hourly on television' the intention to do so." See, e.g., 5 Wayne R. LaFave, Search and Seizure § 10.10(c) at 453 (4th ed. 2005) (quoting Anthony G. Amsterdam, Perspectives on the Fourth Amendment, 58 Minn. L. Rev. 349, 384 (1974)).

[2]Commentators have also questioned this proposition: "[O]ne can only wonder to what group will next be applied the notion which, in reality comes down to this: an individual, no matter how law abiding, who belongs to a group that in its entirety has a higher per-capita crime rate than the general populace, is by virtue of that fact a candidate for warrantless police searches." See, e.g., 5 LaFave, supra, at 454.

(holding that officials may not enter a third-party's home to locate the subject of an arrest warrant unless they also hold a search warrant for the home). However, if officials reasonably believe that a parolee or probationer lives at a particular house, courts analyze the search as if the parolee or probationer in fact lived there. Motley, 432 F.3d at 1078; Moore, 371 F.3d at 117.

In the present case, defendants argue that they had a right to enter and search plaintiffs' home without a warrant because they reasonably believed that William lived there and they suspected him of having engaged in criminal activity. Although William appears not to have been living in plaintiffs' home, plaintiffs do not appear to dispute that defendants reasonably believed that he lived there. As discussed, William had a low expectation of privacy and had consented to a search of his living area. See Samson, 126 S. Ct. at 2199; Knights, 534 U.S. at 119-20; Barnett, 415 F.3d at 392. However, William is not a plaintiff, and Fourth Amendment rights "are personal in nature." Steagald, 451 U.S. at 219. A search that is reasonable as to one individual may be unreasonable as to another. Randolph, 547 U.S. at 119; Steagald, 451 U.S. at 219. Thus, the question presented is whether plaintiffs' own Fourth Amendment rights were diminished because defendants reasonably believed that William, a parolee, lived in their home.[3]

---

[3]Arredondo questions whether plaintiffs have "standing" to sue because defendants entered William's, not their, "living spaces." Even assuming that the basement storage area functioned as William's bedroom, plaintiffs had a privacy interest in the common areas of their home, and Latanga had a privacy interest in her basement storage area. See United States v. King, 227 F.3d 732, 746-50 (6th Cir. 2000) (discussing privacy interests regarding the common areas of a duplex). Arredondo also argues that he did not personally seize any contraband and thus did not violate the Constitution. However, this argument overlooks that this is not a suppression motion filed by William but a § 1983 action filed by Sherrie and Latanga alleging an unlawful entry into their home.

6

Some courts have treated individuals living with parolees and probationers as having diminished Fourth Amendment rights. See, e.g., United States v. Cantley, 130 F.3d 1371, 1377 (10th Cir. 1997); Perez v. Simmons, 884 F.2d 1136, 1140 (9th Cir. 1988); People v. Robles, 3 P.3d 311, 317 (Cal. 2000). However, the basis for these decisions is unclear. Perhaps such courts assumed that individuals living with parolees and probationers have a diminished expectation of privacy. However, the reasoning underlying the Supreme Court's view that parolees and probationers have a diminished privacy interest appears not to apply to individuals with whom they live. Parolees and probationers have a low expectation of privacy because their liberty is conditional and because the government "clearly expressed" to them that they were subject to warrantless searches, and they acknowledged this "unambiguously." Samson, 126 S. Ct. at 2199; Knights, 534 U.S. at 119-20. Where, as here, the government gave the parolee's co-resident no notice of its intent to search and the co-resident did not consent to a search, the rationale for concluding that the co-resident has a diminished privacy interest evaporates.

Other courts have held that a parolee's co-resident has a diminished privacy interest based on the parolee's consent to warrantless searches. Donald v. Delaware, 903 A.2d 315, 319-21 (Del. 2006); North Dakota v. Hurt, 2007 ND 192 ¶18 (2007); Wisconsin v. West, 185 Wis. 2d 68, 95-96 (1994). However, although one co-tenant may authorize a search of a home, such authorization is insufficient if another co-tenant is present and objects to the search. Randolph, 547 U.S. at 119. In the present case, both plaintiffs were present when defendants sought to search their home, and both refused to consent to a search. The parties dispute whether Sherrie subsequently changed her position, but it is undisputed that Latanga did not. Thus, notwithstanding William's consent, defendants'

7

entry into and search of plaintiffs' home was unreasonable as to Latanga and, under Sherrie's version of the facts, was also unreasonable as to Sherrie. See Randolph, 547 U.S. at 119. Thus, defendants violated Latanga's Fourth Amendment right to be free from unreasonable searches and may also have violated Sherrie's right.[4]

**B.     Clearly Established**

"Qualified immunity protects government officials from civil liability when performing discretionary functions so long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Alvarado v. Litscher, 267 F.3d 648, 652 (7th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Thus, after a court finds that an official has violated a constitutional right, it turns to the question of whether the right was "clearly established" at the time of the alleged violation. Id. The relevant, dispositive inquiry in determining whether a right is clearly established is whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001). It is not necessary that the very action being challenged has been previously held unconstitutional, so long as the unlawfulness was apparent in light of existing law.

---

[4]Some courts have expressed concern that recognizing that parolees' co-habitants have Fourth Amendment rights would enable parolees to insulate themselves from supervision by moving in with individuals not on parole. See, e.g., State v. Johnson, 748 P.2d 1069, 1073 (Utah 1987) (stating that "[t]he necessity of preserving the parole system's integrity" required the court to ignore the parolee's co-tenant's objections); West, 185 Wis. at 82-84. This fear is unfounded. A co-habitant's objection to a search does not affect its reasonableness as to the probationer or parolee and would not provide a basis for suppressing evidence against the probationer or parolee. See Randolph, 547 U.S. at 119 (stating that "a warrantless search of a shared dwelling for evidence over the express refusal of consent by a physically present resident cannot be justified as reasonable as to him on the basis of consent given to the police by another resident") (emphasis added).

8

Anderson v. Creighton, 483 U.S. 635, 640 (1987). The plaintiff bears the burden of establishing the existence of a clearly established constitutional right. Jacobs v. City of Chi., 215 F.3d 758, 766 (7th Cir. 2000).

In February 2006, it would not have been clear to a reasonable officer that a warrantless search of a parolee's residence was unreasonable as to a present, objecting co-tenant. Prior to Randolph, most courts had concluded that one resident's consent to a home search authorized entry into the home even over the objections of a co-resident. Randolph, 547 U.S. at 108 n.1. Further, several pre-Randolph cases treated a parolee's co-tenant as having no more rights than the parolee. See, e.g., Perez, 884 F.2d at 1140; West, 185 Wis. 2d at 95-96; see also James M. Binnall, He's On Parole . . . But You Still Can't Come In: A Parolee's Reaction to Georgia v. Randolph, 13 Geo. J. Poverty Law & Pol'y 341, 348 (2006) (noting that courts are beginning to consider this question anew under Randolph); Jason M. Ferguson, Randolph v. Georgia: The Beginning of a New Era in Third-Party Consent Cases, 31 Nova L. Rev. 605, 635-66 (2007) (same). The Wisconsin Supreme Court decided one such case, which defendants may have given particular weight. See West, 185 Wis. 2d at 95-96. Indeed, the present case may well be the nation's first post-Randolph case involving a parolee's present, objecting co-habitant. Cf. Taylor v. Brontoli, No. 04-CV-487, 2007 U.S. Dist. LEXIS 33672 (N.D.N.Y. May 8, 2007); Donald, 903 A.2d at 321; Hurt, 2007 N.D. 192, ¶18.

Given that plaintiffs' brother, William, consented to searches of his residence as a condition of parole and defendants reasonably believed that William lived with plaintiffs, it was reasonable for defendants to believe that they could lawfully search plaintiffs' home

9

over their objections. As such, defendants are immune from damages liability. See Saucier, 533 U.S. at 202.

## IV. CONCLUSION

For the reasons stated,

**IT IS ORDERED** that defendants' motions for summary judgment are **GRANTED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**.

**IT IS FURTHER ORDERED** that the clerk of court enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 5 day of March, 2008.

/s_____
LYNN ADELMAN
District Judge